33 C.C.P.A.(Patents)

## SHAFER v. COOPER.

## COOPER v. SHAFER.

**Patent Appeals Nos. 5063, 5064.**

Court of Customs and Patent Appeals.

Jan. 7, 1946.

The Firm of Charles W. Hills, of Washington, D. C. (J. Arthur Gross and Carlton Hill, both of Chicago, Ill., and William A. Smith, Jr., and Spencer B. Michael, both of Washington, D. C., of counsel), for Shafer.

Mitchell & Bechert, of New York City (Martin T. Fisher, of Washington, D. C., and Fred J. Bechert, of New York City, of counsel), for Cooper.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

These are appeals from a decision of the Board of Interference Examiners of the United States Patent Office in an interference proceeding awarding priority of invention of the subject matter of count 1 of the three involved counts to Shafer, and priority on counts 2 and 3 to Cooper. The interference arose between the application of Shafer filed February 5, 1940, and that of Cooper filed January 5, 1939. Both parties took testimony and many exhibits were received.

The counts originated in Shafer's application and are as follows:

"1. The combination with a pair of rings disposed one within the other, of a third ring secured in the outer ring and projecting into spaced relation from the inner ring, said third ring having a sloping wall portion disposed at an acute angle relative to the outer ring, a flinger having a flange axially outward of and parallel with said wall portion and a base pressed onto the inner ring projecting beyond the inner edge of the third ring, and the terminal end of said base defining a shoulder axially inward of the inner end of said third ring.

"2. The combination with pair of rings disposed one within the other and held in radially spaced apart relationship and against substantial relative movement in an axial direction, the outer of said rings having a counterbore, of a sheet metal sealing disk extending across the space between the rings and seated at its outer portion on the bottom of said counterbore, a second sheet metal sealing disk extending across the space between the rings and abutting said outer portion of said first mentioned sealing disk, said second sealing disk having a generally longitudinally outwardly and radially inwardly extending portion spaced from the other sealing disk and forming therewith a channel opening toward the outer surface of said inner ring, a third seal member including a sheet metal sleeve rigidly secured on the outer surface of said inner ring and extending axially inwardly beneath the inner edge of said second sealing disk and substantially completely across said channel, said sheet metal sleeve at its axially outer end having an integral flinger flange substantially following the contour of said second sealing disk and located at the outside thereof and lying in sealing proximity to said second sealing disk, said flinger flange terminating at its outer edge radially short of and adjacent said counterbore.

"3. The combination with a pair of rings disposed one within the other, of a retainer projecting inwardly from the outer ring into spaced relation from the inner ring, a sealing ring projecting inwardly from the outer ring along an inclined path into spaced relation from the inner ring and from the retainer, and a flinger having a base portion pressed on the inner ring and extending beyond the inner edge of the sealing ring together with a flange portion disposed outwardly from the sealing ring and sloping in the same general direction as the sealing ring in closely spaced relation therefrom."

The subject matter relates to sealed ball bearings in which the entry of dirt and the loss of lubricant is prevented by means of cooperating sheet metal sealing disks attached respectively to the stationary and the rotatable race members of the bearing.

The board held count 1 to be properly supported by the drawings and disclosure of Shafer's patent No. 2,194,328, dated March 19, 1940, on an application filed February 21, 1938, with which his involved application was copending, and awarded Shafer constructive reduction to practice on that count as of the date of his prior application.

With respect to counts 2 and 3, the board held Shafer to have been the first to conceive the subject matter thereof, but the last to reduce the invention to practice, for the stated reasons that the test was inadequate and amounted to no more than an abandoned experiment; that Shafer's testimony had not been fully corroborated; that reasonable diligence had not been sufficiently shown and no adequate excuse for lack thereof was tendered; and that Cooper had not derived the invention from Shafer as the latter contended.

The crux of the controversy over counts 2 and 3 is whether or not the evidence of the test of a sealed ball bearing device made by Shafer in 1936 and in evidence as an exhibit, which clearly comprises all of the limitations of counts 2 and 3, was properly corroborated.

It appears that the exhibit was tested by Shafer in 1937 together with another bearing unit sealed by two-plate seals. It may be noted that count 1 involves only two seal plates, whereas counts 2 and 3 each defines a three-plate seal. The test of the exhibit

was assertedly made in a box called a "torture chamber," in which conditions more severe than would be encountered in the commercial use of sealed bearing units were created. The test was observed by an officer of the company which Shafer had interested in his research. The observation consisted in looking through the glass top of the test box and seeing that abrading sand was whirling through the box and around the bearings being tested. The testimony of the witness, intended to corroborate that of Shafer, nowhere shows that he knew the exhibit was actually within the box. A subsequent report made by Shafer indicated that the exhibit performed successfully in that very little of the abrasive sand had penetrated through the outer shell of the bearing and that no lubrication had leaked. The corroborating witness testified that his company would have exploited the device but was not in a financial position to do so. Shafer subsequently took that device, together with another similar in many respects to it but containing a felt filter, for which a patent was later granted, to his present licensee, who put the latter into production on a large scale. Nothing further was done with the former device until 1941, when it was tested merely for grease leakage at various speeds.

From what has been said it is. clearly apparent that the testing of Shafer's device was not sufficiently corroborated.

■ It is alleged that Cooper had knowledge of Shafer's work at the plant of his licensee through a sales engineer for the company with which Cooper was associated. Since the record does not show any activity concerning the seal of the said exhibit at the place of business where Shafer was working, we cannot understand how the sales engineer could have observed what was going on in the plant with respect to the exhibit. It does not appear that the features of the exhibit were disclosed to either Cooper or the sales engineer. Therefore we agree with the board in holding that Shafer did not sustain his burden of showing derivation.

■ Since Shafer, although the first to conceive the subject matter of counts 2 and 3, is entitled to a date for constructive re-

duction to practice only as of the time he filed his involved application, February 5, 1940, Cooper, who filed his application January 5, 1939, was properly awarded priority of the subject matter of those two counts.

In view of what has already been said it is not necessary to discuss the other reasons advanced by the board in awarding priority of invention of the subject matter of counts 2 and 3 to Cooper.

Cooper contends here that count 1 is ambiguous and should be construed to read on Fig. 5 only of Shafer's application. The Board of Interference Examiners pointed out that Cooper did not deny that the count reads literally on Figs. 2, 3, 4 and 6 of Shafer's involved application, but that he contended it must be construed as reading only on said Fig. 5.

Fig. 5 of Shafer's instant application comprises three metal sealing plates, differing principally from Figs. 2, 3, 4 and 6 in that the latter figures disclose a filtering means such as felt adjacent the outer sealing plate. Figs. 2, 3 and 4 depict two metal sealing plates, while Fig. 6 shows three metal sealing plates, as does Fig. 5.

■ The board stated that count 1 had originally been claim 5 in Shafer's application and had been stated by counsel to be generic to Figs. 1 to 6, inclusive, and that such statement had not been controverted by the examiner. The board further pointed out that if Cooper had considered count 1 to be too broad, as he apparently contended below, he should have moved to dissolve the interference during the motion period.

■ An examination of the disclosure in the instant application convinces us that count 1 is clearly readable at least on Fig. 3 of the instant application and is likewise applicable to Fig. 2 of Shafer's aforesaid patent in the same manner. Count 1 is. clear and unambiguous, and there is no occasion for construction.

For the reasons set forth herein, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

BLAND, Associate Judge, concurs in the conclusion.